*523 OPINION of the court, bv
$udge Wallace.
Blanton, who was complainant in the court below, claims under the following entry : “ December 25fh 1782, Charles Beasley, assignee, &c. enters 1200 acres, &c. joining Joseph Blackford’s N. W. line the whole length thereof, on the waters of Glenn’s creek, and to lie between Glenn’s creek and the first creek below it which runs into Kentucky, and to extend wardly, so as to have the dividing ridge which runs between the said creeks nearly in the middle of thesuney.”
It appears that Joseph Blackford, heir at law to Sam-uei Blackford, on the 22d ot April, 1780, obtained a certificate from the commissionss, for a settlement right of 400 acres of land, and the pre-emption of 1000 acres adjoining, and that on the 24th of June, 1780, he entered this settlement with the surveyor, “ on the sorth fork of Glenn’s creek, including an improvement *524 of Joseph Blackford’s and David Glenn’s field where be raised corn,” which in substance is conformable to the location contained in his certificate. And it further appears, that on the 9th of December, 1782, John Craig and Robert Johnson, assignees of John May, who was assignee of Joseph Blackford, entered 1000 acres of land, on a pre-emption warrant, “ joining and including the settlement as near in the centre of the tract of land as prior claims will admit,” This court will presume, as the parties and the court below seem to have done, that this is the claim of Blackford which is alluded to in Beasley’s entry. And Allen and his wife, by their, attorney have expressly admitted that the Kentucky river, and Glenn’s creek, and the north fork of Glenn’s creek, as laid down in the connexion filed in this cause, %vere notorious by those names, at and before the dates of the entries under which Blanton now claims. So that the first inquiry of importance which arises is, does the call in Beasley’s entry, joining Joseph Blackford’s northwest line, mean the northwest line of Blackford’s settlement, or the northwest line of his pre- . -, 1 eiflption «
B’s claim of 400 acres to be furveyed In a jfquare to the cardinal points including his improvement at the interfeftion of thediagon-
^ . B. on theiV. and W. the •whole length of diagonal of B's 400 acre fur-tT^b t0 /'o’1 iioo^'acraE— lines parallel to the general ridge u/be ex! tended from each end ofthis Bne at right an* gles to these parallelprojeft-give the^quan-uíy.
Here this court is constrained to differ in opinion from the court below ; because anterior to the date of Beasley’s entry, Blackford had assigned his pre-emption warrant to John May, and May had assigned it to John. Cra¡g and Robert Johnson, who had located it with the surveyor m their own names ; and it does not appear that Blackford ever hud any other definite lines, cither actua‘ or ideal, but those of his settlement ; and therefore this court conceives that a line of the settlement was meant by Beasley, and must have been so under, stood by other locators. This requires that the location °f Blackford’s settlement should be further investigated,
It calls to include an improvement of Joseph Black, ford, and David Glenn’s field, where he raised corn. f he place styled David Glenn’s cornfield, is satisfactorily identified ; and it is also satisfactorily proven that ⅛⅛ place is the improvement of Blackford intended in Beasley’s location. Moreover, it is satisfactorily proven that this cornfield was generally known by the name of David Glenn’s cornfield, at the time and long before the location in question was made ; but it is not ex-, pressly proven to have been generally reputed to be *525 Josepn Blackford’s improvement prior to the date of jie-tslev’s entry, nor that David Glenn’s cornfield and Joseph Blackford’s improvement were different names lor the same spot of ground. It is however proven that Samuel and Joseph Blackford were combined with David Glenn in raising corn at this place in the year 1775, and that it was called David Glenn’s cornfield only because he was the leader or head of the party, and not because he claimed the land.
Indeed the circumstance that Glenn laid in Black* ford’s claim before the commissioners, evinces that he did not claim the laud himself. And moreover, it is proven that the north fork of Glenn’s creek, on which the claim is situated, was also called Blackford’s fork, most probably because Samuel Blackford, or Joseph Blackford, who became heir at law to Samuel Blackford, had an early claim to land thereon. It is also proven that Joseph Hinton, who had made an improvement in that vicinity, agreed with Joseph Blackford on a con* ditional line, which necessarily implies that he knew Blackford claimed the cornfield ; and it may be cert-ainly inferred that Hinton, Glenn and Blackford, informed many of their acquaintances that this improvement was Blackford’s. And it is further proven, that a considerable trace led from Leestown by this field or improvement towards the head of Glenn’s creek, which was commonly travelled by those who had business in that quarter ; and it is highly probable that many of those travellers would be informed that it was Black-ford’s improvement. And finally, it is proven that in the year 1783, 1784 and 1785, it was very generally known to fie Blackford’s improvement. So that the presumption is violent that it was known as such to the generality of those who were conversant in that vicinity in December, 1782, when it must be believed that the name of the owner of every improvement of equal notoriety had been discovered ; for it is well known that during the three preceding years, and indeed for double that length of time, multitudes had been searching with anxiety to discover vacant lands in that quarter of the
But if any doubt remains as to the general reputation that the place named Glenn’s cornfield, was Blackford’s improvement, it ought to be further observed, that this *526 P^ace waa so obvious that it must have been discovered by every person who explored the neighborhood ; and it does not appear that there was any other improvement therein, besides the one claimed by- Joseph Hinton, which could have produced uncertainty, and this would have been removed by attending to the other calls in Beasley’s entry, viz. to lie betvveen the waters of Glenn’s creek and the first creek below it which runs into Kentucky, and to run northwestwardly, so as to have the dividing ridge which runs between the said creeks nearly in the middle of the survey. For it appears from the surveyor’s connexion exhibited in the cause, that the dividing ridge intended could not have been mistaken, and that it is narrow, uniform and extends nearly northwest and southeast, and that reversing the call northwestwardly, the ridge points almost directly to Blackford’s improvement, which was sufficicnt-without further information, to have led any person who would have used reasonable diligence, to the improvement. Therefore, the court conceives that the improvement intended could have been ascertained, not onlv from its general notoriety, but from the particular description contained in Beasley’s entry. It is true that thei expressions in the location of Blackf rrd’s settle-, ment, including an improvement of Joseph Blackford’s, and David Glenn’s cornfield, at the first view, might have induced the apprehension, that the improvement and the corn fie Ld were- two different and distinct objects ; but a careful invea.tigaion, if not the information of those conversant in tile neighborhood, would have removed it. It now only, remains to consider the pricise form and situation that a survey made on this entry should have assumed. At the date of Beasley’s entry, Blackford’s settlement had not been surveyed, and conformably to well established principles, it should have ioeen laid off m a square, with the improvement in the centre, and the lines to the caidinal points, and then it would not present any northwest-wardly line ; therefore as in the case Crow's heirs vs. Harrod's heir, (a) Walker et al. vs. Montgomery, (b) and several others, the call in Beasley’s entry, joining Joseph Blackford’s northwest line the whole length thereof, cannot be taken literally, but must be taken rnean ⅛⅛⅛⅞ the aorthwe-st side, or in other words *527 f’.u’ u hole extent of the north and west boundaries of ¡Slack ford’s settlement ; for the whole of those boundaries, one part as much as another, compose the northwest side. But as the diagonal of Blackford’s settlement would not be equal to the square of Beasley’s entry for 1200 acres, it may be urged that this diagonal ought to be extended equal distances so far to the northeast and southwest as to produce the square of 1200 acres, and by this means render the survey on Beasley’s entry as near a square as circumstances will permit. And it is confessed that there is not an express call in that entry to the contrary; and this court has repeatedly adjudged, that when an entry for land which can be sustained, does not prescribe the precise form of the land, it ought to be surveyed as nearly in a square as the calls of the entry will justify ; yet in this case, as the call to adjoin Blackford’s line in its whole length, seems to be intended to give a definite base, and if the diagonal of Blackford’s claim had happened to exceed the square of 1200 acres, would certainly have expended this base beyond the square, so in like maimer it ought to control the length of the base when it happens to be less. (From this part of the opinion Judge Logan dissents.) Therefore the court is farther of opinion that inlaying off Beasley’s entry* parallel lines should be extended from the terminations of the said diagonal so far that a line at right angles to them will contain the quantity of 1200 acres. The said parallel lines to be at equal distances from the general course of the dividing ridge called for in the entry, so lar as it shall be comprehended in the survey, ft need only be added, that the appellants have solely relied on their elder grant, which is younger than the entry on which the appellee relies ; so that the appellee, who was complainant in the court below, must prevail so far as the entry has been correctly surveyed.
Decree reversed, and cause remanded for a decree conformable to the foregoing opinion, &c.

 Hard, 533.

 Ante 256 7-M-Cracken vs. Steel and Searcy, vol. 1, p. 42.